UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL F. HEKENBERGER,

        Plaintiff,

 v.                                                Case No. 17-C-619

JEFFREY MEKASH, et al.,

        Defendants.

---

**DECISION AND ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Michael F. Hekenberger, who is currently incarcerated at Redgranite Correctional Institution, brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants Jeffrey Mekash, Jennifer Von Haden, Edward Bowden, Matthew West, Amanda Sonnenberg, Brigit O'Connor, Heather Rogers, and Kim Velleman violated his constitutional rights while he was incarcerated at the Brown County Jail. Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs stemming from his heroin withdrawal. The case is before the court on Defendants Velleman, Sonnenberg, Rimmer, and O'Connor's motion for summary judgment. Defendants Mekash, Von Haden, Bowden, and West joined the motion. Defendants seek summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). For the reasons set forth below, the court will deny Defendants' motion for summary judgment and instead order a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

## BACKGROUND

On July 15, 2014, Plaintiff was arrested in Oneida, Wisconsin on suspicion of conspiracy to deliver heroin and was booked into the Brown County Jail. Pl.'s Proposed Findings of Fact ¶¶ 8–9, Dkt. No. 66. Plaintiff informed booking officers of his history of heroin abuse and dependency, reported that he had used heroin the night before, and indicated that he would soon be entering withdrawal and would need medical assistance. *Id.* ¶ 11. After Plaintiff was booked and placed in his cell, Plaintiff claims that he began experiencing nausea, vomiting, agitation, sweating, diarrhea, anxiety, panic attacks, restlessness, cold sweats, hallucinations, seizures, incontinence, and significant physical pain. *Id.* ¶ 12. He called for help using the emergency call button located in his cell and requested help from officers performing rounds in his unit. *Id.* ¶ 13. An inmate in a neighboring cell also called for help after hearing "gurgling" sounds from Plaintiff's cell. *Id.* ¶ 14. When help arrived, Plaintiff was found on his cell floor unconscious and foaming at the mouth. *Id.* ¶ 15. He was subsequently brought to Aurora BayCare Medical Center for emergency medical treatment. *Id.* ¶ 16. Plaintiff went into cardiac arrest and had to be resuscitated multiple times. *Id.* ¶ 17. He ultimately underwent a surgical procedure in which a pacemaker/defibrillator was implanted in his chest. *Id.* ¶ 18. After the surgery, Plaintiff was placed in the hospital's Intensive Care Unit for approximately ten days. *Id.* ¶ 19.

Plaintiff was discharged from the hospital on July 29, 2014. *Id.* ¶ 20. He was rebooked into the Brown County Jail later that day and was placed in segregation where he remained for approximately 20 days. *Id.* ¶ 21. Plaintiff was an inmate at the Brown County Jail for about one year before being transferred to Dodge Correctional Institution. *Id.* ¶ 22.

**ANALYSIS**

Summary judgment is proper of the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must construe the evidence in the light most favorable to the non-moving party. *Ramos v. City of Chicago*, 716 F.3d 1013, 1014 (7th Cir. 2013).

Defendants contend they are entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. The PLRA provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The objective of § 1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects inmates to "adhere to "the specific procedures and deadlines" established by the institution's policy. *Dole*, 438 F.3d at 809; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, Defendants must establish that an administrative remedy was

available and that Plaintiff failed to pursue it. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2016). When factual disputes regarding exhaustion exist, the court must resolve those disputes through an evidentiary hearing. *Pavey*, 544 F.3d at 742.

The Brown County Jail implemented a grievance procedure which allows inmates to express and resolve any issues related to their conditions of confinement. Defs.' Proposed Findings of Fact ¶ 5, Dkt. No. 57. The grievance procedure, which is contained in the Jail's Inmate Handbook, requires that any grievance must be filed within 48 hours of the incident giving rise to the complaint. The Handbook provides that any grievances filed beyond the 48-hour time limit may be honored if good cause is shown for the delay. Dkt. No. 57-4 at 10.

Plaintiff concedes that he did not file a grievance relating to his treatment on July 15, 2014, but asserts that he could not exhaust administrative remedies because they were not available to him. Indeed, an inmate's claim is not subject to the PLRA exhaustion requirement when no administrative remedies are "available" to him during the relevant exhaustion period. *Hernandez*, 814 F.3d at 842 (citing 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 93). Jail authorities cannot "immunize themselves from suit by establishing procedures that in practice are not available because they are impossible to comply with or simply do not exist." *King v. McCarty*, 781 F.3d 889, 894 (7th Cir. 2015); *see also Lanaghan v. Koch*, 902 F.3d 683, 689 (7th Cir. 2018) ("A secret grievance procedure is no procedure at all, at least absent some evidence that the inmate was aware of that procedure.").

Plaintiff asserts that he was not made aware of the administrative procedure for filing a grievance because he was not provided with a copy of the Brown County Jail's Inmate Handbook, did not participate in a classification interview with Jail staff while an inmate at the Jail, and was

4

not informed of the grievance process by Brown County Jail staff or administrators. Instead, he learned about the inmate grievance process by talking with other inmates long after he was booked into the Jail. Defendants dispute that Plaintiff was never provided with a copy of the Handbook, noting that it is Jail policy to provide all inmates with a copy of the Handbook even if the inmate does not receive a copy during the initial classification interview. Defendants assert that Plaintiff should have filed a grievance once he became aware of the grievance procedure in accordance with the Jail's "good cause" exception.

On this record, Defendants have failed to show that the administrative grievance process was available to Plaintiff and that he simply failed to take advantage of it. Although Plaintiff may have received a copy of the Handbook and became aware of the grievance procedure at some point during his incarceration at the Jail, the record must be developed further to determine whether Plaintiff was aware of the grievance process and the "good cause" exception during the relevant exhaustion period. The court therefore denies Defendants' motion for summary judgment and will schedule a *Pavey* hearing in this matter.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 56) is **DENIED**. Due to a genuine issue of material fact being present as to whether Plaintiff exhausted his administrative remedies, the court will schedule a *Pavey* hearing. The Clerk is directed to set the matter on the court's calendar for a telephone conference to schedule the required hearing.

**SO ORDERED** this  18th  day of April, 2019.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court