UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL F. HEKENBERGER,

> Plaintiff,

v.                                        Case No. 17-C-619

AMANDA SONNENBERG,

> Defendants.

## DECISION AND ORDER

Plaintiff Michael Hekenberger,[1] an inmate at Redgranite Correctional Institution, is proceeding on Fourteenth Amendment claims based on assertions that Defendant Nurses Amanda Sonnenberg, Brigit O'Connor, Heather Rimmer, and Kim Velleman's responses to his opioid withdrawal symptoms were objectively unreasonable. On January 31, 2022, Defendants filed a motion for summary judgment. The Court will grant their motion and dismiss this action.

## BACKGROUND

Hekenberger was booked into the Brown County Jail on July 15, 2014. A booking officer completed a booking observation report just after 2 p.m., wherein he recorded Hekenberger's responses to a series of questions as well as his own observations of Hekenberger. According to the report, Hekenberger denied having a history of epilepsy and denied being on medications. He disclosed that he had used heroin the night before and said, "he is ok now but is expecting to feel like shit soon." After booking, Hekenberger was placed in a cell. Dkt. No. 114 at ¶¶1-10.

---

[1] Attorneys Bryant Dorsey, George Burnett, and Jill J. Ray of Conway Olejniczak & Jerry as well as Thomas Burnett of Reinhart Boerner Van Deuren volunteered to represent Hekenberger on a pro bono basis. The Court relies on volunteer attorneys to represent prisoner plaintiffs who lack the capacity to represent themselves. The Court thanks them for their service.

During this time, Velleman, Sonnenberg, Rimmer, and O'Connor worked as nurses in the health services unit at the jail. Typically, nurses would screen new inmate booking observations two to three times per shift to identify any immediate medical needs. Non-Defendant nurse Erica Weichart indicated that she had reviewed Hekenberger's booking observations by adding her initials to his report. None of the Defendants were involved in screening or reviewing Hekenberger's booking observation report. Dkt. No. 114 at ¶¶16, 19-28.

At the relevant time, there were two ways for an inmate to request medical attention: He could fill out a form and an appointment with a doctor or nurse would be scheduled, or he could seek help from an officer by pressing his emergency call button; officers would contact health services if appropriate. Health services staff was not notified when an inmate pressed his emergency call button; they relied on officers to notify them when an inmate required medical attention. Dkt. No. 114 at ¶¶31-37.

According to Hekenberger, he began to experience withdrawal symptoms on July 16, 2014, the day after he arrived at the jail. Hekenberger asserts that he pressed the emergency call button in his cell to request medical attention. He also asserts that he informed a non-Defendant officer that he was experiencing withdrawal symptoms. The officer notified health services. Shortly thereafter, at 2:15 p.m., Sonnenberg assessed Hekenberger's condition and documented that he was feeling hot and cold, had joint and muscle pain, was restless/irritable, felt nauseous, was vomiting, had a loss of appetite, was experiencing tremors, and had a runny nose. His blood pressure and pulse were within normal limits. Sonnenberg noted that Hekenberger was in withdrawal and charted to "start protocol." Dkt. No. 114 at ¶¶11, 41-48.

Sonnenberg called the attending on-call physician. He returned her call at about 3:40 p.m. and ordered "Hydroxizine 50mg BID x 3days, Clonidine 0.1 mg BID x 3 days, monitor BP before

each dose of Clonidine." No orders were provided for anti-seizure medications because, at that time, no seizures or seizure disorders had been reported and seizures are not an anticipated consequence of opioid withdrawal. Because the doctor had not ordered the medications to be given immediately, they would be distributed during the evening medication pass, which would begin between 4 and 5 p.m. Sonnenberg's shift ended at 4 p.m., so she transferred Hekenberger's care to non-Defendant nurse Leah Hamby. Hamby assessed Hekenberger's symptoms at 3:50 p.m. and noted that he was now also reporting auditory hallucinations and watering eyes, but his vitals remained normal. At that time, Hekenberger reported that he has a seizure disorder and had not taken his medication in a while. A "Release of Information" was prepared to obtain information about his seizure history and associated medication. Dkt. No. 114 at ¶¶50-62.

Just more than an hour later, at 5:15 p.m., non-Defendant Officer Matthew West received a call from an inmate next to Hekenberger's cell stating that it sounded like Hekenberger was choking on his tongue. West found Hekenberger laying on his back; he appeared to be having a seizure. Medical staff responded to West's call. The doctor was called and ordered Hekenberger be sent to the emergency room. Dkt. No. 114 at ¶¶65-68.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials

3

that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Before turning to the merits of Hekenberger's claims, the Court will address Defendants' argument that they are entitled to summary judgment because Hekenberger failed to exhaust the available administrative remedies before he filed his lawsuit. Defendants already raised this argument. On February 22, 2019, Defendants filed a motion for summary judgment on exhaustion grounds. On April 18, 2019, the Court denied the motion, explaining that Defendants had failed to show the administrative grievance process was available to Hekenberger. Given the genuine issue of material fact as to whether Hekenberger had exhausted the administrative remedies, the Court scheduled a *Pavey* hearing for June 7, 2019. Dkt. Nos. 70, 73. On June 3, 2019, Defendants filed a letter explaining that they had decided to withdraw their argument that Hekenberger had failed to exhaust; they requested the Court cancel the *Pavey* hearing. Dkt. No. 74.

Defendants are stuck with their decision to withdraw their exhaustion argument. The Court provided Defendants with an opportunity to resolve the evidentiary dispute in a *Pavey* hearing, and Defendants declined that opportunity. The Court will not allow them a second bite at the apple.

Turning to the merits, it has been long settled that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Hekenberger's claims against Velleman, Rimmer, and O'Connor are easily dispensed with because Hekenberger provides no evidence from which a jury could reasonably conclude that any of them screened his booking observation report, treated him, or otherwise interacted with him. Hekenberger points to O'Conner's initials appearing on one of his records, but she explained that her involvement was limited to the administrative task of inputting the doctor's medication order. Hekenberger offers no evidence suggesting that she participated in his care. Given that there is no evidence that Velleman, Rimmer, and O'Connor caused or participated in a constitutional deprivation, they are entitled to summary judgment.

With regard to Hekenberger's claim against Sonnenberg, because he was a pretrial detainee at the relevant time, Hekenberger's claim arises under the Fourteenth Amendment and is subject to the objective unreasonableness standard. *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). To survive summary judgment, Hekenberger must provide evidence that Sonnenberg "acted purposefully, knowingly, or perhaps even recklessly when [she] considered the consequences of [her] handling of [Hekenberger's] case" and that the challenged conduct was objectively unreasonable. *McCann v. Ogle County, Ill.*, 909 F.3d 881, 886 (7th Cir. 2018) (citations omitted). The Court must focus on the totality of facts and circumstances faced by Sonnenberg and gauge objectively whether her response was reasonable. *Id.*

Hekenberger presents sufficient evidence from which a jury could conclude that, by the time Sonnenberg examined him, his withdrawal symptoms were objectively serious. But no jury could reasonably conclude that Sonnenberg's response to his symptoms was objectively

unreasonable. Shortly after learning from an officer that Hekenberger had requested medical care, Sonnenberg examined him. She then called the on-call doctor, who returned her call a little more than an hour later and ordered medication to help ease Hekenberger's symptoms. Although Hekenberger's symptoms were objectively serious, they were not, at that time, life-threatening. His vitals (blood pressure and pulse) were normal and Sonnenberg knew of no underlying conditions, so there was no indication that emergency care was required. The on-call doctor did not order the medication to be administered immediately. But given that the evening medication pass was to set to begin within an hour, Sonnenberg had no reason to believe that a short delay in administering the medication would be harmful to Hekenberger. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (holding that nurses may defer to a treating physician's orders unless it is apparent that the order will likely harm the patient). Shortly before Sonnenberg's shift ended, she transferred Hekenberger's care to another nurse. Sonnenberg had no responsibility for Hekenberger's care after her shift ended. Considering the totality of the care Sonnenberg provided based on the information she knew at the time, no jury could reasonably conclude that her response to Hekenberger's withdrawal symptoms was objectively unreasonable. Accordingly, Sonnenberg is entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 104) is **GRANTED** and this action is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this  26th  day of April, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.